JOHN E. MOORE vs. OBADIAH DURGIN.

York.   Decided April 3, 1878.

*False imprisonment.*

D had a contract with the city made while he was a member of the city government for renewing a bridge which necessitated the removal of the old structure, and had collected his materials at the point where they were to be used. A controversy arose between D and the city authorities as to the suitableness of the materials; and the defendant, who was city marshal, by direction of the city authorities, for this reason, notified D and his men not to remove the old bridge or proceed with the work. The defendant knew that the plaintiff was in the employ of D, but on his refusal to desist from the work, arrested him without a warrant, committed him to jail until a warrant could be procured, and took him before the municipal court on a charge of obstructing the highway by removing the planking from the bridge. *Held,* that, inasmuch as the city authorities at the time of the arrest had not claimed that the contract was void because D was a member of the city government, or given any notice to that effect, but were insisting on its performance, the contract could not be regarded as an absolute nullity, and that although the use of so much force as might be necessary to prevent the plaintiff from proceeding with the work might be justified, the arrest and imprisonment of the plaintiff without legal process was not justifiable. But *Held,* further, that under all the circumstances of the case, the damages assessed ($500) were grossly excessive.

ON EXCEPTIONS and MOTION.

TRESPASS.

*I. T. Drew* with *H. H. Burbank & F. W. Guptill,* for the defendant.

*E. Eastman & G. C. Yeaton,* for the plaintiff.

BARROWS, J.   Plaintiff declares for an assault and false imprisonment which defendant claims to justify under the following circumstances: One Deering had a contract with the city of Saco for the rebuilding of a bridge. Plaintiff was in his employ and engaged under his orders in removing the old structure. Defendant was city marshal, and, acting under the orders of the mayor and the committee on streets who had a controversy with Deering as to the fitness of the materials which he had procured to answer his contract, notified the contractor not to remove the old bridge,

ordered the plaintiff to desist from his work, and on his refusal arrested him without a warrant, put him in jail until a warrant could be procured and took him before the municipal court on a charge of obstructing the highway by removing the planking of the bridge. Defendant knew that Deering had such a contract and that the plaintiff was in Deering's employ; but he claims that under the city ordinances his official duty required him to protect the city property and to remove all impediments and obstructions in the streets, and that he might rightfully obey the order of the mayor to prevent the contractor and his men from tearing up the ' old bridge, and for this purpose might lawfully arrest the plaintiff and hold him until a warrant could be procured.

At the trial it appeared that Deering was an alderman of the city when he made the contract aforesaid, and defendant further contended that the contract was void under the provisions of R. S., c. 3, § 29, and afforded no justification to the contractor or his men, and that they were mere trespassers in removing the old bridge, and that he might properly deal with them as he did, under the provisions of R. S., c. 133, § 4, which authorizes city marshals and certain other officers to arrest and detain persons found violating any law of the state or any legal ordinance or by-law of a town until a legal warrant can be obtained. It did not appear however that at the time of the arrest, any question as to the validity of the contract with Deering had arisen ; but, on the contrary, that the only ground for the interference by the mayor and the committee on streets was the claim that the timber procured by him was not what the contract called for.

Hereupon the presiding judge instructed the jury in substance that, had the city repudiated the contract on the ground of its being in violation of R. S., c. 3, § 29, then Deering and his men might have been regarded as trespassers, violating the law, and defendant as justified in making the arrest; but if the city officers were attempting to stop the work on the ground that the timber procured by the contractor was not suitable, and were not designing to annul or repudiate the contract itself, but only contesting the mode in which it should be carried out as to the materials, claiming no advantage and giving no notice that the contract was

forbidden by the statute, then, in such case, the plaintiff was at work under at least an apparent authority or license and color of right, and he would not be engaged in committing a breach of the peace, or violating any law of the state, for which his arrest without a warrant could be justified; and this would be so, although the contractor had promised the city officials the day before that he would desist from the work until the question as to the suitableness of the materials could be settled; that perhaps the use of so much force as might have been necessary to prevent the plaintiff from going on with the work on the bridge might have been justified, but not his arrest and imprisonment without a warrant. Of these instructions the defendant complains, and plausibly insists in argument that when the contractor was forbidden to proceed with the work under a contract which the statute declares void, there was an end of any justification for him or his men, and they were all trespassers destroying the city property, and liable to arrest without legal process.

But we think that so long as the city authorities recognized the contract as valid and subsisting, and were disputing with the contractor only as to the manner in which he proposed to perform it, it could not be regarded as an absolute nullity, nor the workmen employed in executing it as engaged in a breach of the peace, or in the violation of any law of the state, or by-law of the city so as to subject them to an arrest and imprisonment without a warrant.

Instances are numerous where, both in statutes and decisions, the words void and voidable are used indifferently; the word void being often employed where it is plain that voidable would convey more accurately the signification intended. *Van Shaack* v. *Robbins*, 36 Iowa, 201. *Brown* v. *Brown*, 50 N. H. 538, 552. *Kearney* v. *Vaughan*, 50 Mo. 284. *Pearsoll* v. *Chapin*, 44 Pa. St. 9. *Seylar* v. *Carson*, 69 Pa. St. 81, 87, 88.

It would be contrary to reason and justice to subject the contractor's employees to summary arrest and imprisonment upon the verbal order of the city authorities, when there was nothing inherently wrong in the nature or terms of the contract they were engaged in executing, but solely on account of the personal inca-

pacity of one of the contracting parties, (a fact not then recognized by either) so long as both parties were proceeding under the contract as if it were valid and binding, and insisting upon its performance accordingly.

The instructions given placed the case upon the right footing before the jury. So much force as was necessary to prevent the plaintiff and the other employees of the contractor from proceeding, until the question as to the materials was settled, was justified. But, as observed by Patterson, J., in *Wheeler* v. *Whiting*, 9 Car. & P. 262, the taking into custody without a warrant is a different thing. See, also, *Howell* v. *Jackson*, 6 Car. & P. 723, as to what will justify an arrest without process as for a breach of the peace.

But, while the defendant's act was not technically justifiable, and the instructions of the presiding judge rightly held him responsible therefor, the damages assessed were exorbitant. The testimony indicates no injury to the plaintiff except a very brief detention. The defendant courteously, distinctly and repeatedly warned him to desist before the arrest, nor were his acts apparently dictated by any feeling of ill will or disposition wantonly to oppress the plaintiff; nor would it seem that the plaintiff's character or feelings could have suffered much. In such a controversy among the city authorities, he was even more likely to be regarded as the hero of the occasion than as an offender against the law. The defendant might naturally believe it to be his duty to obey the orders of the municipal authorities where the interests of the city were concerned; and where, through mistake, without malice he oversteps the line of his duty, he is not responsible beyond the amount necessary to compensate the injured party. The aim of the plaintiff seems to have been vengeance, and not redress. We think the entry should be,

*Exceptions overruled. Motion sustained, unless the plaintiff remits all over $100. If he so remits, Motion overruled and Judgment for plaintiff for $100 and costs.*

APPLETON, C. J., WALTON, VIRGIN, PETERS and LIBBEY, JJ., concurred.